**LIVINGSTONE SECURITIES CORPO-
RATION et al., Defendants,
Appellants,**

v.

**Dean MARTIN et al., Plaintiffs,
Appellees.**

**No. 6208.**

United States Court of Appeals
First Circuit.

Heard Jan. 7, 1964.

Decided Feb. 25, 1964.

Mack M. Roberts, Brookline, Mass., with whom Melvin Newman, Brookline, Mass., was on brief, for appellants.

John R. Hally, Boston, Mass., with whom Nutter, McClennen & Fish, Boston, Mass., was on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts, entered July 2, 1963, following a trial before the court sitting without a jury, holding the defendants-appellants to have breached their contract with the plaintiffs-appellees and awarding plaintiffs the sum of $40,663.25 with interest and costs. The court also dismissed the defendants' counterclaim.

The facts, in brief, are as follows. Plaintiffs are six individuals engaged in various aspects of the entertainment industry. They were represented in the transaction here in issue by Edward Traubner, d/b/a Edward Traubner & Company, Inc., plaintiffs' "Business Manager," who acted as their duly authorized agent at all times material to this case.

The defendants are M. Eli Livingstone, d/b/a Livingstone & Co., and Livingstone Securities Corporation.[1] The individual defendant is engaged in the business of investments, with particular reference to government securities. The corporate defendant is a broker dealing in government securities.

Acting through the agency of Traubner, plaintiffs claim to have entered into separate contracts with defendants by which defendants agreed to sell, on or before December 31, 1959, to each plaintiff, varying amounts of United States Treasury 2½% bonds due to mature November 15, 1961. Plaintiffs agreed to buy at 95 20/30, i. e., $956.25 for each $1,000 bond. They were to pay by check a sum representing approximately five percent of the costs of the bonds, plus accrued interest and commissions. Defendants agreed to loan to plaintiffs the remaining 95 percent of the cost of the bonds, i. e., $1,721,875 for the period

---

1. By stipulation of the parties following the trial, the amended complaint as to Samuel Livingstone, vice president of Livingston Securities Corporation, was dismissed.

December 31, 1959 to November 15, 1961, interest on the loan to be paid at the rate of 5% per annum. Plaintiffs agreed to pre-pay to defendants on or before December 31, 1959 the entire amount of the interest due on the loan. Defendants admit reaching the above agreements but deny that they constituted an enforceable contract as no agreement was reached on the documentation necessary to carry them out. Plaintiffs claim the documentation was agreed upon at various later stages of the transaction.

The proposed transaction appealed to plaintiffs for in the year 1959 plaintiffs had incomes which placed them in the 65% to 80% federal income tax bracket. The proposed transaction had potential tax advantages in that the payment of interest by the plaintiffs in the year 1959 would entitle them to a corresponding deduction for that year and on the sale of the appreciated bonds the capital gain would be taxed at the lower applicable rate. These tax considerations were made known to defendants and were a consideration in the negotiations.

Both parties agreed that the transaction would be executed through Hirsch & Co., a New York broker.[2] Also in order to carry out Traubner's wish for security against unauthorized use of the pre-paid interest money, the trial court found that Livingstone offered to buy bonds of the series involved with the pre-paid interest forwarded by plaintiffs and send them to Traubner to hold as Livingstone's agent; upon completion of the transaction Livingstone would own the interest earned by the bonds; if the transaction fell through the bonds could be liquidated and Traubner recover the full pre-paid interest or, should plaintiffs elect to take a capital gain after six months but prior to maturity of plaintiffs' promissory notes, the bonds could be used to obtain a partial refund of the pre-paid interest. Defendants contend that they had a right to the interest on the bonds even if the transaction was not completed.

In accordance with the above outlined agreement, Traubner sent to Hirsch & Co. two separate sets of checks to credit to the account of Livingstone Securities Corporation. The first set, six checks totalling $166,437.50 and representing the pre-paid interest on the loan, were cashed by Hirsch and credited to Livingstone Securities Corporation's account with Hirsch. The second set of checks, representing the amount due from each plaintiff on account of margin, commission and accrued interest was not cashed by Hirsch and was returned to Traubner on January 15, 1960 pursuant to instructions given Hirsch by Samuel Livingstone, Vice President of Livingstone Securities Corporation. The reason given by defendants for the return was that Traubner's cover letter forwarding the checks was in improper form since it directed that the bonds were to be in the names of the various plaintiffs. The trial court could find no significant difference between Livingstone's instructions on the matter and plaintiffs' performance.

On January 1, 1960, Traubner sent a telegram to Hirsch & Co. advising that he had remitted $166,437.50 to Hirsch for the account of Livingstone Securities Corporation, and ordering Hirsch to forward 2½% November 1961 Government bonds, in the face value of $175,000 to Traubner's account at the City National Bank, Beverly Hills, California. These directions were complied with and Traubner received the bonds about January 10, 1960.

The transaction failed to reach completion, primarily because the market price of the Treasury bonds had risen since the date of the December 1959

---

**2.** The reason Hirsch was used was that Traubner was familiar with previous difficulties that Livingstone had with the Internal Revenue Service and believed the government would question anything defendants' name was associated with.

Also, Traubner insisted on an *actual* purchase of bonds, an *actual* payment of margin and an *actual* payment of interest so that the transaction would not be questioned.

agreement, as had the interest rates, and Livingstone would have had to absorb a loss to carry out the agreement. The lower court found that M. Eli Livingstone had breached the contract when he said that he would "not go through with the deal" after Traubner refused to use some of the money obtained from the $175,000 bonds in Traubner's possession to make up the difference between the $101,596 margin payment[3] and the loss that Livingstone was going to sustain on the purchase of the bonds. On November 15, 1961, the maturity date, Traubner sold the bonds in his possession receiving the $175,000 face value which included the 2½% accrued interest. Defendants in their counterclaim challenged this action by Traubner, claiming that the 2½% interest gained on the bonds should have been returned to them.

In this appeal defendants raise four points which are primarily concerned with the sufficiency of the evidence to support the findings of fact made by the trial court: (1) whether an agreement was reached as to the documentation necessary to perform and carry out the agreements admittedly reached as to the purchase price of the bonds, the amount of the loans, interest to be charged on the loans and margin to be paid; (2) whether the failure of plaintiffs to execute promissory notes relieved defendants of any liability;[4] (3) whether plaintiffs failed to make the margin payments in the manner prescribed by defendants; (4) whether upon failure of the transaction to materialize defendants were entitled to the 2½% interest on the bonds held by Traubner.[5]

Rule 52(a), Fed.R.Civ.P. provides in part that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the oppor-

tunity of the trial court to judge of the credibility of the witnesses." Here, the trial court was essentially faced with a question of credibility: whether the plaintiffs' or the defendants' version of the transaction was the proper one. The court chose to disbelieve the testimony of Samuel Livingstone and M. Eli Livingstone and found the true facts to be as testified to by the plaintiffs. This court appreciates the advantage Rule 52 (a) gives the trial court in such a situation and, after a careful examination of the record, is unable to say that the findings of fact reached by the lower court were "clearly erroneous."

Judgment will be entered affirming the judgment of the district court.

3. Following defendants' rejection of the margin payments, at M. Eli Livingstone's request, Traubner forwarded the $101,-596 to the New York firm of Garvin, Bantel & Co. for the account of Livingstone Securities Corporation.

4. Plaintiffs claimed an understanding that the notes would not be signed until de-

fendants bought the bonds and that, in any case, defendants at no time conditioned the fulfillment of their part of the contract on the signing of the notes.

5. Defendants' additional point that if a contract existed it lacked substance on the authority of Miles v. Livingstone, 301 F.2d 99 (1st Cir. 1962) is without merit.